KENNON, Judge.
Plaintiff brings this suit to collect from defendant one-fourth of the value of the crop produced in 1949 on one hundred acres of land purchased on March 12, 1949 by plaintiff from its former owner., '■
Defendant conceded that he farmed the land in question and that plaintiff became the owner of same on March 12, 1949, but set forth that by written contract duly recorded in December, 1948, he held a lease for several years, including the year 1949, under the terms of which he was obligated to pay $420.00, which amount he admitted to be due.
From a judgment of the District Court dismissing his suit, plaintiff prosecutes the present appeal.
Defendant answered the appeal, praying that the- judgment be affirmed, but that same be amended so’ as to allow him damages for the wrongful issuance of the writ of sequestration.
The deed by which plaintiff acquired thé land contains the stipulation that it is subject to the lease in favor of defendant, which provided for the cash rental conceded by defendant to be due. In support of his contention that the tenant owed him one-fourth of the crop produced, plaintiff Mills testified that defendant Knox had requested him to purchase' the land in question and had verbally agreed, in the event Mills made the purchase, to release the land from the cash lease agreement. Defendant denied that he ever agreed to- release the land, admitting only that he, at one timé, offered to give up his lease for a price of $500.00, which offer, he said, the plaintiff did not accept.
Plaintiff, a white man, is an experienced and successful merchant and farmer. He knew that a written contract of lease would take precedence over an indefinite oral discussion. The defendant is a colored farmer to whom plaintiff in times past had extended credit and possibly other business favors. .There were several discussions between the parties, which the plaintiff contends resulted in a surrender by Knox of his written lease. A careful reading of the testimony shows that, while Kermit Knox, the defendant, may not have been positive in his refusal to accede to plaintiff’s suggestion that he, Knox, give up his lease, nevertheless, it is not shown that Knox ■ made any .definite agreement to give up the benefit of the-written lease, signed between him and the former landowner, and recognized by plaintiff in the deed wherein he acquired the leased premises. The existence of this uncertain state of affairs, namely, that plaintiff was insistent that Knox give up his lease and that Knox’s reaction was something short of an outright consent, is shown by the following quotation from plaintiff’s testimony: “I went in there (the defendant’s place of business) and talked the trade over with him the best I knew how and explained the trade in every detail from *464 starting to finish. I said Kermit I said I want to know what are you going to do, I said- are you going to stick up to what you told ¡me in this deal or are you going to back down. And he said well, Mr. Mills, just l.et me, said let me study on it a few days says I’ll come there -and talk to you next week. I said well Kermit I said you know what you said. He said Mr. Mills I’m not denying nary a word that you tell me about this trade is exactly true but said I just want to study on it one day next week. I said well Kermit you don’t need to study, I said you know whether you are right or wrong. I said you know what you said. I said you said it three different times. I said now, are you going to stick to it or not stick to it. He said well just let me study on it. I could never get him to tell me yes or no,: so I said all right Kermit, nothing will do you but wait till next week we’ll see what you do-—see if you come down there next week. Well next week come around he didn’t come, so it rocked on that way about—I don’t know—didn’t keep up with how many days but I imagine around three weeks, I caught him out there at Darnell at Mr. Hales’ one night. And I said Kermit why didn’t you come down like you agreed to. He said well Mr. Mills, I just been busy and . ain’t had time but said I’ll be down next week. I said all right Kermit I’ll see if you come , down next week. I said I’m going to wait and see. Well it rocked on about three more weeks and he didn’t come down and talk to me about this deal.”
A further study of plaintiff’s entire testimony leaves doubt as to whether he considered the negotiations for the proposed cancellation final. Indicative of the inconclusive nature of their talks is the testimony of plaintiff that he asked Knox to come to the office of plaintiff’s lawyer in Oak Grove so that their contract-could be reduced to writing and signed.
The recorded four year lease which the former owner had granted tó defendant Knox was quite favorable to him. Under its terms he could sublease to other people on the one-fourth share and still reasonably expect to make money on the transaction. Since the cash lease was recorded, his rights thereunder would be protected no matter who became the purchaser. It is not logical to believe that Knox would readily give up something which was worth this substantial sum of money. The explanation given by plaintiff is that Knox thought that someone other than Mills, whom he did not wish to own the land, might go in and purchase it from the Texas owner. However, this sort of preference for landlords is hardly sufficient to counterbalance the benefits of Knox’ favorable four year written lease, under which he could make long range plans for labor, rotation of crops, etc., and accept, in its stead, a short term lease under which the rental to be paid by Knox in an, ordinary crop year would amount to more than double that provided in the recorded lease.
It -would serve no useful purpose to give a further resume of the conflicting testimony, which contains ample support for the finding of the District Court in favor of defendant.
In his answer to the appeal, defendant has asked that damages be allowed for the wrongful issuance of the writ of sequestration. Defendant abandoned his claim for attorney’s fees, doubtless because no separate trial was held on the motion to dissolve. We agree with the District Court that the testimony with reference to other damages was too vague and indefinite to support a judgment, and we have concluded to amend the judgment so as to reserve.to the defendant his right to make valid proof of these damages in a subsequent suit.
For the reasons assigned, the judgment is amended by dismissing defendant’s demand for damages on account of the wrongful issuance of the writ of sequestration as' of nonsuit. The judgment as amended is affirmed, with costs of both courts.